AMERICAN NATIONAL BANK OF PARIS v. FIRST NATIONAL BANK OF CLARKSVILLE ET AL.

Decided December 5, 1908.

**1.—Mortgage—Conflicting Liens—Judgment.**

In a controversy between parties seeking to enforce conflicting liens on the same property, a judgment denying relief to one whose mortgage was found subordinate to an adverse claimant could be sustained only on the theory that his lien was invalid even against the surplus remaining after satisfying the first incumbrance.

**2.—Mortgage—After Acquired Title.**

A mortgage of lumber by the owner of a saw mill attached to lumber afterwards sawed and stacked on his premises, where by arrangement between the parties such stacks were afterwards agreed on and marked as the property covered by the mortgage.

**3.—Estates of Decedents.**

The community property, on the death of the husband, descended to his heir, as joint owner with the widow, subject to the right of the latter to dispose of it in settlement of community debts and to the rights of creditors to enforce their claims against it by administration or otherwise.

**4.—Same.**

There being no administration, and the surviving widow having conveyed her interest in the community property to her son-in-law on his assuming payment of the community debts, the latter could execute a valid mortgage of same, subject to previously existing liens.

**5.—Vendor's Lien—Growing Timber—Conversion—Waiver.**

The vendor's lien on land attaches to the growing timber thereon and also to the same when cut and manufactured into lumber by the vendee and those claiming under him, in the absence of circumstances showing a waiver of such lien or an agreement entitling them to cut and sell the product.

**6.—Same—Manufactured Lumber.**

The vendor who is seeking to enforce his lien against the proceeds of lumber made from timber growing on the land, it having been sold by agreement and the proceeds held to answer the lien in lieu of the specific property, is entitled to his lien on the entire proceeds, and is not limited to the value of the material from which it was made, as growing timber.

ON MOTION FOR REHEARING.

**7.—Conflicting Liens—Harmless Error.**

Where it appears that the proceeds of property against which conflicting liens are asserted are insufficient to satisfy the first incumbrance, the judgment will not be reversed for failure to recognize the rights of a junior incumbrancer to any surplus.

Appeal from the District Court of Red River County. Tried below before Hon. Ben. H. Denton.

*Burdett & Connor,* for appellant.—Allen occupying the position of

a mortgagor in possession, the trees growing upon the land, when severed and sawed into lumber, became his personal property free from liens against the land.  Duty v. Graham, 12 Texas, 427; Willis v. Moore, 59 Texas, 635; Lombardi v. Shero, 14 Texas Civ. App., 597; Jones on Mort., secs. 453, 454, 684, 687, 688, 695; McCammant v. Roberts, 87 Texas, 244; Brown v. Leath, 17 Texas Civ. App., 264; Baker v. Clepper, 26 Texas, 634; Sampson v. Williamson, 6 Texas, 113.  That vendee in deed reserving lien is mortgagor in possession: Stephens v. Motl, 82 Texas, 86, sub. 4; Carey v. Starr, 93 Texas, 508; Minter v. Burnett, 90 Texas, 249; Willis v. Somerville, 3 Texas Civ. App., 513; Johnson v. Real Estate Association, 2 Texas Civ. App., 500; Insurance Company v. Ricker, 10 Texas Civ. App., 266.

The execution of the mortgage and the subsequent acts of Allen in pointing out and designating the sixty stacks in controversy as the lumber covered by said mortgage, and his placing tags on it, "Mortgaged to Am. National Bank of Paris," created a valid mortgage lien on said lumber to secure the debt of appellant, whether the same was cut from the land before or after the legal title to such land was vested in Allen by the deed from Martha Mims.  Mays v. Lewis, 4 Texas, 44; Satterwhite v. Rosser, 61 Texas, 172, 173; Ackerman v. Smiley, 37 Texas, 215, 216.

Allen being rightfully in possession of the land from which the trees from which the lumber in controversy was manufactured were cut, his acts were not the acts of a naked trespasser, and the greatest right which the holders of the liens against the land could have had against such lumber was to assert a lien against it for the value of the trees as they grew on the ground.  Texas & N. O. R. Co. v. Jones, 34 Texas Civ. App., 94; Emporia Lumber Co. v. League, 105 S. W., 1167; Pettit v. Frothingham, 106 S. W., 907.

*Lennox & Lennox*, for appellees.—There was no meeting of the minds of the debtor and creditor upon the requisite elements of a binding contract to enlarge the mortgage so as to cover after-acquired property, and there was no allegation of a substitution.  Wallis, Landes & Co. v. Taylor, 67 Texas, 434; Hicks v. Ross, 71 Texas, 360; Hort v. Epstein, 71 Texas, 756; Milling Co. v. Eaton, German & Co., 86 Texas, 410; Leeds v. Reed, 36 S. W., 349; Summers v. Mills, 21 Texas, 88; Missouri, K. & T. Ry. Co. v. Smith, 81 S. W., 22, 25; Kraft v. Sims, 1 App. C. C., secs. 404, 405; Hall & Jones v. Jackson, 3 Texas, 311; Jones on Chattel Mortgages, secs. 62, 71 and 54.

Allen neither owned the land, nor the sawmill, nor the stacks of lumber in controversy, nor had a potential right to the same, when he executed the mortgage to appellant, and the said lumber being in nowise the same property therein described, it acquired no lien by reason thereof and the court did not err in so holding.  Richardson v. Washington, 88 Texas, 341; Jones on Mort., secs. 65, 138, 145.

The timber was part of the realty and subject to plaintiff's debt after severance without its consent and it had a right to follow it through all its different changes.  The rule of severance in this state as laid down by the authorities in appellant's brief has application

only to grasses and other annual crops. Bowen v. Lansing Wagon Works, 91 Texas, 385; Carey v. Starr, 93 Texas, 515; Citizens Nat. Bank v. Strauss, 29 Texas Civ. App., 407; Sullivan v. Texas Briquette & Coal·Co., 94 Texas, 541; Hutchins v. King, 68 U. S., 53 (17 L. Ed. 546); The Bolles Woodenware Co. v. United States, 106 U. S., 432 (27 L. Ed., 230); Jones on Mortgages, sec. 144, 433a, 434, 436.

When J. M. Mims died the community estate between himself and his surviving widow descended to and vested in, her and his heir subject to the payment of all the community debts, except the exemptions, and neither she nor her vendee had the legal right to so handle, change or dispose of said property, or any part thereof, as ·to deprive these creditors of their right to subject the same—in whatever form or condition it might be found—to the payment of their debts and the court was, therefore, authorized in foreclosing the plaintiffs' lien upon said lumber under this phase of the case. Rev. Stats., art. 2219; Sanger Bros. v. Heirs of Moody, 60 Texas, 97; Moore & Son v. Moore, 89 Texas, 33; Blinn v. McDonald, 92 Texas, 607.

The creditors of J. M. Mims were entitled to foreclose their respective liens in the property in its then condition as against the appellant, and subject the entire proceeds thereof to the payment of their debts and the court did not err in so holding and rendering · judgment accordingly. Fouts v. Ayres, 11 Texas Civ. App., 338; Hicks v. Ross, 71 Texas, 359.

HODGES, Associate Justice.—John M. Mims, who resided in Red River County, Texas, died on or about the 25th day of January, 1907. Prior to his death, some time during the year 1901, he bought a tract of land, consisting of about 357 acres, from Daisy Connor Pierce, and gave his note for $500, in which a vendor's lien was retained, as a part of the consideration. Some time thereafter, and before his death, Mims contracted various other debts to different parties, among whom was the First National Bank of Clarksville, Texas. The Clarksville bank became the owner of the Pierce note and some other outstanding debts and liens against Mims, which, together with Mims' personal indebtedness to it, amounted to several thousand dollars at the time of his death. All of the debts left by Mims were community obligations, and the 357-acre tract of land before mentioned was the community property of Mims and wife. At the time of his death he left but one surviving heir, a daughter, Mrs. Gertrude Allen, the wife of W. R. Allen, one of the defendants in this suit. After the death of Mims, W. R. Allen, the husband of Gertrude Allen, appears to have taken charge of a sawmill plant previously owned by Mims and situated on the tract of land before mentioned, and began to operate it, to cut timber, saw lumber, and to sell the lumber indiscriminately. About the last of April, 1907, W. R. Allen borrowed $2,053.35 from the American National Bank of Paris, Texas, and gave as a security for its payment a mortgage, or what purports to be a mortgage, on lumber on the yards at the Mims sawmill, in Red River County, Texas. This mortgage was duly

registered in the office of the county clerk of Red River County, Texas. On the 15th day of May, 1907, Mrs. Mims, the survivor of the community of herself and John M. Mims, conveyed the tract of land and other property belonging to the Mims estate, with the exception of the homestead and some personal property, to W. R. Allen, in consideration of $125 in cash and the assumption and agreement by Allen to pay all of the debts against the estate of John M. Mims. In August, 1907, J. F. McReynolds, the president of the American National Bank of Paris, one of the parties to this suit, visited the Mims mill and there interviewed W. R. Allen concerning the security which had theretofore been pledged to the American National Bank to secure the payment of his note, and requested Allen to point out the lumber which he had mortgaged to that bank. McReynolds was acting for and in behalf of the American National Bank. Allen thereupon designated sixty stacks of lumber situated in the yards of the mill as the lumber upon which the American National Bank had its mortgage; and at the request of McReynolds that he designate those stacks in some way so that they could be identified and that others would have notice of the mortgage, Allen put a placard or label upon each, bearing the following: "Mortgaged to the American National Bank." Some time thereafter, about the 1st of September, when the note from Allen to the American National Bank became due, McReynolds again visited Allen at the mill and demanded a settlement, and, according to his testimony, Allen declared that he was unable to meet the note except with the lumber, and told McReynolds to take possession of the lumber and sell it under the mortgage. This McReynolds proceeded to do; and after having advertised the lumber for the requisite time, sold it at public outcry at the courthouse door in Clarksville, Red River County, and purchased it for the American National Bank for the sum of $750, which amount was entered as a credit on Allen's note. H. H. Lennox, attorney for the First National Bank of Clarksville, was present at the sale, and in behalf of the First National Bank of Clarksville gave notice that that bank claimed a mortgage upon the property sold and would, in course of time, expect to foreclose its lien. On the 11th day of September, 1907, this suit was filed by the First National Bank of Clarksville, making Joella Davis and her husband, the Corinth Engine & Boiler Works, the First National Bank of Enloe, the American National Bank of Paris, the First State Bank of Klondike, and W. R. Allen and wife, Gertrude Allen, defendants. All of the other parties except the American National Bank and W. R. Allen and wife claimed to be creditors and to have some liens against the estate of John M. Mims and W. R. Allen. It appears that afterwards Mrs. Mims intervened in the suit and set up the vendor's lien which she held against W. R. Allen reserved in the sale of the Mims estate to him for the consideration hereinbefore stated.

Insofar as the questions raised by this appeal are concerned, the material allegations of the plaintiff's original petition set out the various debts held by it against the estate of John M. Mims, and liens upon the 357 acres of land before mentioned. It sets out the

fact that Mrs. Martha Mims, in her own right and as the survivor of the community of herself and John M. Mims, did, on the 15th day of May, convey the land above mentioned to W. R. Allen for the considerations stated; that Allen accepted the deed according to its terms and conditions, and agreed to pay said indebtedness. It alleges that since the purchase of the 357 acres of land and the creation of its lien thereon, Mims made permanent and valuable improvements, consisting of the purchase and location of a certain sawmill and appurtenances; that at the time said liens were created there was standing and growing upon the land a large amount of valuable timber, and that the material value of said land was on account of that timber, and that since the death of Mims, Allen, without the consent of plaintiff or the owners of the vendor's lien note, had cut and removed from the said tract of land the growing timber thereon to the amount of one million feet, of the value of $3,000 as it stood in the trees, and that said security has been depreciated to that amount; that there is now located upon said land and within the mill yard of the said W. R. Allen sixty-two stacks of yellow pine lumber, one stack of kiln-dried lumber, a large amount of dressed lumber and various other small piles of lumber, and also a certain quantity of logs unsawed. The lumber is estimated to be worth about $2,000 and the logs $500. It is further alleged that the timber cut and removed from the said land was a material part of the plaintiff's security. Plaintiff prayed, among other things, that its deed of trust and vendor's lien be established and foreclosed upon the land, machinery, lumber and logs mentioned and described in the petition.

It is unnecessary to mention the answers filed by any of the defendants except that of the American National Bank, inasmuch as it is the only one which has complained of the judgment of the court. On December 27, 1907, the American National Bank filed its first amended original answer, claiming an indebtedness against Allen by note for the sum of $2053.35, with interest from the 30th day of August, 1907, and attorney's fees. It acknowledged the payment of two credits amounting in the aggregate to $1358.12. It set out its mortgage executed by Allen, as before mentioned, and the further fact that thereafter Allen had delivered the lumber to it and the lumber had been sold under the terms of the deed of trust, and that the credit of $750 had been placed upon the back of the note as the result of the proceeds of that sale. It also alleged that it remained in possession of said stacks of lumber continuously from the time it was delivered to it by W. R. Allen on the 3d of September, 1907, up to the time the same was sold by Lennox & Lennox by agreement as thereinafter set out. It also alleged that after the institution of this suit, by agreement of all of the parties Lennox & Lennox, attorneys for the plaintiff, sold all of the lumber situated on said yards, including the sixty-two stacks, for the net sum of $1319.69, and that that sum was in the hands of the plaintiff by virtue of an agreement to the effect that it was to stand in lieu of the lumber, and that judgment should be entered, giving to each party such rights or liens on the money as that party would have had in the lumber.

It asks for a judgment against Allen, for interest and attorney's fees and foreclosure of its mortgage, and, in the event it was found that the sale which had theretofore been made of the lumber delivered by Allen should prove ineffective in conveying the title to the defendant, that the credit entered on the note be cancelled.

The case was tried before the court without a jury, and resulted in a judgment in favor of the plaintiff in the suit, and also a judgment adjusting the rights of other defendants, who asked affirmative relief, but decreed that the American National Bank take nothing by its suit except a judgment against Allen for the amount of his debt. From this judgment the American National Bank alone has appealed.

In addition to the facts hereinbefore stated the testimony tended to show that at the time McReynolds visited Allen in August, 1907, none of the lumber which was on the mill yard at the time the mortgage to the American National Bank was executed, was then on hand; that the sixty piles of lumber which were pointed out by Allen as subject to the mortgage and marked as having been mortgaged, had all been cut since the execution of the mortgage. It is further shown that early in September, when McReynolds made his second visit and demanded settlement, Allen turned the lumber over to him, and that McReynolds put one of the employes of the mill in charge of the lumber to watch and look after it until such time as it might be sold under the mortgage. After the lumber was sold it was permitted to remain upon the mill yards by McReynolds until after the institution of this suit, when, by agreement, all of the lumber on the yards was delivered to the plaintiff's attorneys, Lennox & Lennox, by them sold, and the proceeds deposited as stated in the pleadings.

It is claimed by the appellant in its various assignments of error that the court erred in holding that the appellant was neither a lienholder nor the owner of any portion of the lumber found upon the yards of the Mims sawmill after the institution of this suit, and that it had no right to any portion of the proceeds of the sale of that lumber subsequently made by agreement of the parties by Lennox & Lennox. While the court made no specific findings of fact, and stated no separate legal conclusions, we think the judgment rendered can be sustained only upon the theory that the appellant was neither a lienholder nor the owner of any interest in the lumber above mentioned. Had it been found that the appellee did have a lien, or was the owner of any part of the lumber here involved, even though such lien and ownership were subordinate to the rights of the other creditors, or any of them, appellant would still have been entitled to a judgment fixing its rights upon whatever surplus might remain after the satisfaction of such claims as the court might conclude had priority. It will be observed that the judgment fails to accord the appellant any such right.

Naturally, the first question which presents itself is, was the evidence sufficient to show as a matter of law that as between W. R. Allen and the appellant, the latter was either a lienholder or the owner of any portion of the lumber involved in this suit? The testimony concerning the material facts is practically undisputed. All

of the property owned by Mims at the time of his death, belonged to the community of himself and wife. The debts which remained outstanding against him are conceded to be community obligations. Upon his death his estate descended and vested in his heirs burdened with his debts. Rev. Stat., art. 1869; Blinn v. McDonald, 92 Texas, 604. Upon the death of Mims his surviving wife was the owner in her own right of an undivided one-half interest in the estate, and the other half descended and vested in Mrs. Gertrude Allen, the wife of W. R. Allen. W. R. Allen and wife had the right to assume joint control with Mrs. Mims in the use and management of the property after the death of John M. Mims, subject to the rights of the creditors to have an administration, and of the right of Mrs. Mims as the survivor to dispose of the property, or a portion thereof, in the settlements of the community debts with which the estate was charged, or of her further right to qualify as survivor under the statute and assume exclusive control and management of the property. None of these contingencies occurred in a manner to interfere with the use and management of the property by Allen. The testimony justifies the conclusion that as early as the 30th day of April, 1906, and probably earlier, W. R. Allen assumed charge of the Mims mill, which was situated on the tract of land in controversy, and began to cut and saw timber from the land jointly owned by his wife and her mother, and a part of the Mims estate. Under the authorities in this State that lumber, to the extent at least of the one-half interest owned by Mrs. Allen, became the community property of W. R. Allen and wife, and as such could be the subject matter of a valid mortgage by Allen, in subordination, however, to such claims as might have priority in law. White v. Lynch, 26 Texas, 195; Hayden v. McMillan, 4 Texas Civ. App., 479; Spear on Married Women, sec. 189. We may safely assume that at the date of the mortgage, May 2, 1906, Allen was therefore rightfully in the possession of the lumber described in the mortgage, and had the undisputed right to encumber an undivided one-half of it subject to the conditions above mentioned. However, on the 15th day of May thereafter Mrs. Mims, who seems never to have made any objections to Allen's management of the property, conveyed to Allen the full title to all the Mims property except the homestead and some articles of personal property not here involved. If the lumber which had previously been mortgaged by Allen still remained on hand this conveyance had the legal effect of placing it all within the encumbrance—not only the one-half which Allen had the right in the first instance to mortgage, but that which was at that time owned by Mrs. Mims as well—upon the principle that a mortgage will attach upon an after-acquired title. Taylor v. Huck, 65 Texas, 238; Sweetzer v. Jones, 82 Am. Dec., 639. There can hardly be any doubt that the lumber pointed out by Allen in August as that which was covered by the mortgage to appellant constituted a large portion of that which was later, by agreement of the parties, sold, and the proceeds now held by Lennox & Lennox to await the result of this suit. Whether this was the lumber originally included within the terms of the mortgage or not, when first given by Allen, it at least had the effect of a substitution of that

lumber for the original lot, for it appears to have been accepted by the appellant's agent as the mortgaged property, and was unquestionably assented to by Allen. Leeds v. Reed, 36 S. W., 348. When the debt due from Allen to the appellant matured, and upon demand being made for payment thereof, he directed McReynolds as the appellant's agent to take charge of the lumber which had previously been pointed out as that covered by the mortgage and placarded as before mentioned, and sell it under the terms of the mortgage. It thus appears that the lumber was constructively, if not actually, delivered to McReynolds, who left it in charge of an agent and proceeded to advertise and sell under the terms of the mortgage. Adoue v. Seeligson, 54 Texas, 595; Osborn v. Koenigheim, 57 Texas, 92. About the 14th of September following the lumber was sold and purchased by the appellant for the sum of $750, which amount was credited on Allen's obligation. We think that upon any phase of the evidence the conduct of Allen in these transactions had the effect of creating, as between him and the appellant, a valid and subsisting lien upon the property, and that the sale of the property under the terms of the mortgage in the manner done had the legal effect of vesting in the appellant whatever title Allen may have had to the lumber. The appellant having thus succeeded to whatever rights Allen had in the lumber, such rights should have received recognition in the judgment of the trial court in disposing of the liens against the property. A failure to do so, we think, was error.

The next question, then, is, was the right of the appellant to the proceeds of the lumber superior to the claims of the other creditors? An answer to this question must depend upon facts which the pleadings do not warrant us in inquiring into. It may be regarded as a general rule that a lien upon land includes the growing timber standing thereon at the time the lien is created. Carey v. Starr, 93 Texas, 508; Webber v. Ramsey, 43 Am. St. Rep. (Mich.), 429, and cases cited in notes; Jones on Mortgages, sec. 689. However, we think there may be conditions attending the creation of a lien on land where it may reasonably be inferred that the mortgagor should have the right to cut and sell the timber therefrom. If such right is given, either expressly or by implication, then it follows that the mortgagor could convey a good title to the timber and to any of its products. Angier v. Agnew, 42 Am. Rep., 624; Moore v. Southern S. L. & T. Co., 83 Fed., 400; Jones on Mortgages, secs. 689 and 692. Again, conditions might be such that the lien would be considered as having been waived as to the timber and its products, or the lienholder might permit the mortgagor to so deal with the timber and the lumber manufactured therefrom as to estop himself from claiming the benefits of the lien as against a purchaser who paid value and relied upon such conduct. A course of dealing which would estop a landlord from asserting his lien as against a purchaser for value from a tenant, would be equally as effective in estopping the lienholder from asserting a lien upon timber which had been disposed of by the mortgagor, and purchased in good faith, for value. Planters Compress Co. v. Howard, 41 Texas Civ. App., 285; Gilliam v. Smither, 33 S. W., 985.

These are all matters of fact which should be inquired into by the court or the jury under proper pleading and evidence. In the absence of some pleading that there had been either an express or an implied waiver, or the existence of conditions which would create an estoppel, we must hold that the lumber involved in this suit sustained the same relation to the order of priority among the different claims as did the land itself.

The appellant insists that if it should be found that its claim was inferior to that of the appellee and the other creditors, their preference should be limited to the timber value of the lumber. We do not think this can be urged as a defense in an action to foreclose a mortgage upon specific articles of property. In a suit by the mortgagee for conversion of mortgaged property, or for damages to his security, this rule would furnish the true standard of measuring the damages, where the wrongdoer was not a naked trespasser and acted in good faith. This follows because the wrong was complete when the timber was converted. But where the mortgagee elects to follow the specific articles upon which the lien exists, and to have it subjected to the satisfaction of his claim, his security attaches to the article in its entirety; and we know of no principle of law that will compel him to release any portion of the article because another had knowingly changed its form or added to its value.

For the errors discussed the judgment of the District Court will be reversed.

### ON MOTION FOR REHEARING.

We do not think the mere fact that the record showed the Mims estate to be insolvent was sufficient to justify the conclusion that there would be no surplus left after satisfying the prior liens. The claim of the appellant amounted to over $2,000; the record did not disclose the value of the assets, and we could not assume, even in case of insolvency, that there would not be a substantial balance left for application to this indebtedness after satisfying the prior liens held by the appellees. It appears, however, from the motion filed, that since the trial below the property has all been converted into money and it has been definitely ascertained that there would be no such balance, and that no good would result from another trial. The appellant agrees that this motion may be granted and the case affirmed. In accordance with that agreement, the judgment reversing and remanding the cause will be set aside and the judgment of the lower court affirmed,

*Affirmed.*