## WICKWIRE–MITCHELL ROYALTY TRUST et al. v. TAYLOR.

### No. 6256.

Court of Civil Appeals of Texas. Texarkana.

Feb. 6, 1947.

Jones & Jones, of Marshall, and William Greene, of Shreveport, La., for appellants.

William J. Merrill and Sid B. Turner, both of Carthage, for appellee.

HALL, Chief Justice.

This is an action of trespass to try title brought by appellee against appellants for title and possession of 40 acres of minerals, a part of the Woodall Survey in Panola County. The issue of title was joined by appellants and in addition they pleaded the four years' statute of limitation, R.S. Art. 5520, Vernon's Ann.Civ.St. art. 5520, and offered to adjust equities. Trial before the court resulted in a judgment for appellee for the minerals in controversy. The facts which are undisputed, show that on July 3, 1919, H. C. McDaniel, the common source of title, conveyed 80 acres of the Thomas Woodall Survey to G. T. Barnett and wife for a consideration of $1200, evidenced by four promissory notes, the first of which was due and payable on November 1, 1919. A vendor's lien was retained in the deed. On August 8, 1919, G. T. Barnett and wife conveyed one-half

442

of the minerals under the 80 acres to Byron E. Reed for a consideration of $40.-00 cash, and on November 10, 1919, Reed assigned said minerals to appellants. This is the mineral interest now in controversy. On November 1, 1919, the date the first note against the land became due, Barnett and wife, being unable to pay said indebtedness, reconveyed the 80 acres of land to McDaniel by general warranty deed which recited a cash consideration of $1200. This deed was not filed for record until March 27, 1920. By two deeds dated October 18, 1921, and April 20, 1922, H. C. McDaniel and wife conveyed 160 acres of land of the Thomas Woodall Survey to Dr. J. S. Neal. This conveyance included the 80 acres originally conveyed by McDaniel to Barnett on July 3, 1919, and reconveyed by Barnett and wife to McDaniel on November 1, 1919. The heirs of Dr. J. S. Neal conveyed the property to appellee Odis Taylor on August 9, 1943:

Appellants' Third Point is: "The court erred in holding that the superior legal title to the mineral interest involved remained in McDaniel, appellee's remote grantor, after August 8, 1919; because McDaniel waived his vendor's lien against the property and estopped himself from denying the passage of legal title to Reed, appellants' remote grantor, on such date by urging Barnett, McDaniel's vendee, to sell the minerals 'just like they were paid for and belonged to him.' "

Appellants assert further that the trial court "erred in holding that appellants' title was inferior to that conveyed by Barnett to appellee's remote grantor McDaniel, and that a supposed rescission of the executory contract created by McDaniel's earlier deed to Barnett operated to destroy the right of redemption earlier conveyed by Barnett to appellants' remote grantor." The following circumstances surround the sale of the mineral interest here involved. On August 8, 1919, the date of the sale of the mineral interest by Barnett and wife to Byron E. Reed, it appears that David Nelson, Reed's agent, came to the home of H. C. McDaniel, Barnett's grantor, for the purpose of buying oil leases to and mineral interests in land in that vicinity. McDaniel sent for Barnett,

who came immediately to McDaniel's home where he met Nelson. Barnett was informed by McDaniel that Nelson was buying oil leases and mineral interests. Barnett testified:

"Q. Did Mr. McDaniel explain to you that he was trying to lease some land in a block in that neighborhood? A. Uh-huh.

*   *   *   *   *   *

"Q. Then what did he say? A. I don't remember what he said about blocking the land up, but he said, 'if you are wanting to, this man is buying minerals and leasing land,' and I said, 'what is he paying?' and he says 'twenty-five cents an acre for the lease and fifty cents an acre for the minerals,' and I said 'that is pretty cheap.'

"Q. Uh-huh? A. 'Yes,' he says, 'it is,' but he says 'we both need the money; I need the money and you need the money,' and he says, 'if you want to, you can go ahead and lease this land like you had it paid for; like it was yours.'

"Q. Who was that speaking? A. Mr. H. C. McDaniel.

"Q. Did he say you could sell some minerals; some royalty? A. Yes, he said 'you can sell your minerals and you can lease it too.'

"Q. Just like you had it paid for? A. Yes, 'just like it was yours' he says, 'you need the money,' and I said 'all right' and the man went right ahead and wrote up the lease and I sold the minerals for fifty cents an acre and the lease on the land for twenty-five cents an acre, which made $60.-00 in all, for the eighty acres." (Italics ours.)

Witness testified further that McDaniel was present during all the conversation with respect to the sale of the mineral interest in the eighty acres theretofore sold by him to witness. An inspection of the record reflects that the sale of the minerals was made within 35 days of the date of the sale of the eighty acre tract by McDaniel to Barnett, and from the undisputed testimony, with the consent and upon the insistence of McDaniel, the holder of the lien and superior title to said eighty acres. The undisputed facts also show that McDaniel not only agreed to the sale of the

minerals but encouraged and induced the vendee to sell the mineral interest to Reed *as though the land had been paid for*. In our opinion McDaniel's acts and conduct on this occasion estopped him from asserting his superior title to the mineral interest against Reed and his assignees. American National Bank of Paris v. First National Bank of Clarksville, 52 Tex.Civ.App. 519, 114 S.W. 176. One claiming under a lien contained in a deed or record who makes such representations as to lead another to believe that there is no such prior lien cannot afterward set up his lien against the latter on the ground of constructive notice from the record. Alexander v. Ellison, 79 Ky. 148, 2 Ky.Law Rep. 49. The deed from Barnett and wife dated November 1, 1919, conveying the eighty acres of land back to McDaniel was ineffective to pass the mineral interest theretofore conveyed by Barnett to Reed upon the agreement and at the insistence of McDaniel, this for the reason that McDaniel by his acts and conduct in agreeing to and inducing the sale to Reed was estopped from disputing Reed's title to the mineral interest. "One who by his language or conduct induces another to do or omit that which he would not otherwise have done or omitted to do, is estopped from asserting any claim or maintaining any action against him who is so misled." Lawrance v. Ward, 28 Utah 129, 77 P. 229, 230; Stanley v. Epperson, 45 Tex. 644. In principle the case of Hillmer v. Asher, Tex. Com.App., 29 S.W.2d 1011, is also in point. It is our conclusion then that Reed took title to the mineral interest conveyed to him by Barnett clear of any vendor's lien reserved by McDaniel under the doctrine that McDaniel was estopped to assert his lien as against Reed.

As stated above, appellants purchased the mineral interest here in controversy from Reed and filed their deed for record several months before they had constructive knowledge of a reconveyance of the land by Barnett to McDaniel. Therefore, by said conveyance they were placed in Reed's shoes and received the same title to the mineral interest theretofore held by Reed. It is true that the deed of reconveyance from Barnett to McDaniel was executed on November 1, 1919, but was not filed for record until March 27th, 1920. The assignment from Reed to appellants was made on November 14, 1919, and filed for record the same date. Therefore it is our opinion that whatever title Reed got from Barnett, is now held by appellants.

All subsequent purchasers from McDaniel after he received the title back from Barnett bought with notice of appellants' mineral deed and subject thereto; especially is this true with respect to appellee, who purchased from the heirs of Dr. Neal under a deed which excepted from the general warranty clause the title to a certain mineral interest, a part of which constitutes the interest held by appellants. The recorded mineral deed to appellants was sufficient to put appellee on notice of appellants' claim. This fact, together with the quitclaim character of the conveyance to him of a part of the minerals, was of such nature as to require him as a prudent person to make an honest investigation respecting the nature of the claim of appellants to the mineral interest conveyed to Reed by Barnett. Had he made such investigation he would have learned that McDaniel, his predecessor in title, had not only agreed for his vendee Barnett to sell the mineral interest, but had requested and insisted upon his selling it "like he had it paid for, like it was his." The trial court found that "the plaintiff (appellee) had no knowledge that H. C. McDaniels knew of the sale of the minerals by G. T. Barnett to Byron E. Reed." The circumstances were such as to excite inquiry on the part of appellee, which inquiry, if it had been pursued, would have revealed the very opposite of the court's finding. McDaniel, being estopped to deny or contest appellants' title to the mineral interest, appellee as his remote vendee, is also estopped to contest same. In Central Bank & Trust Co., v. Wyatt, 191 N.C. 133, 131 S.E. 311, 312, it is said:

"Plaintiffs, having derived their title from and succeeded to the estate of J. W. Higgins, are privies in estate with him; and so defendants are privies in estate with the heirs at law of Edward E. Wilson. If, by his conduct as commissioner in the spe-

cial proceeding to partition the lands which descended to them from Edward E. Wilson, J. W. Higgins was estopped to assert, as against the heirs at law of Edward E. Wilson, title to the mineral interests in said land under his reservation in the deed to their ancestor, then he and his privies are estopped to assert such title as against defendants, privies of said heirs at law. Dudley v. Jeffress, 178 N.C. 111, 100 S.E. 253; Watford v. Pierce, 188 N.C. 430, 124 S.E. 838. The question presented here is to be considered precisely as if it had arisen between J. W. Higgins and the heirs at law of Edward E. Wilson."

In 31 C.J.S., Estoppel, § 133, p. 401, the rule is stated: "An estoppel of a grantor by conduct to assert title to property extends to his grantee. It has been held that one acquiring a claim to ownership of land by a quitclaim deed would stand in the shoes of his grantor as to an equitable estoppel against the grantor to assert title against parties in possession. Where a grantee at the date of his purchase knew of the existence of the facts which operate as a bar to the claim of his grantor, this knowledge will bar him; and this is the case where he has knowledge which would have put him on inquiry, such as would have led to a knowledge of the facts." Blackwood v. Davidson, 198 Ark. 1055, 132 S.W.2d 799.

Even granting that McDaniel had the right to and did rescind the sale theretofore made by him to Barnett and repossess the land because of the failure of Barnett to pay the purchase price, it is our opinion that under the circumstances appearing in this record the duty devolved upon McDaniel to notify Reed of his intention to rescind the contract of sale between him and Barnett of the 80 acre tract of land on account of Barnett's failure to pay the purchase price. There is no evidence that this was done. Certainly the deed from Barnett back to McDaniel reciting a cash consideration of $1200.00, filed for record several months after the rights of appellants had attached, was not sufficient to apprise Reed or those holding under him that McDaniel had rescinded the contract for the non-payment of the

purchase money notes. The leading case relating to transactions of this character is Huffman v. Mulkey, 78 Tex. 556, 14 S.W. 1029, 1030, 22 Am.St.Rep. 71, wherein it is said: "The right of a vendor, who has conveyed land through a deed on its face reserving a lien for purchase money, to rescind, is not an absolute right, even in cases in which the purchase money has become due and remained unpaid, as may be seen by an examination of the many cases decided by this court. The right of the vendor to rescind, in such cases, does not exist at all until the vendee has failed to pay purchase money in accordance with the contract, and one to whom a vendee has conveyed is entitled to all the rights of his vendor, which cannot be affected by any transaction between the original vendor and his vendee after the latter has parted with his interest in the land."

We recognize the general rule to be that where a vendee defaults in the payment of the purchase money, the vendor may, when it is not inequitable, rescind the contract and re-possess the land, but we find no authority holding that a vendor has such right (without notice to the sub-vendee) where, as here, he has agreed to and induced the sale to the sub-vendee before his right of rescission accrued. Appellee cites, among others, the case of Yett v. Houston Farms Development Co., Tex.Civ.App., 41 S.W.2d 305, as authority for the proposition that a vendor has the right to rescind an executory contract of sale and redeem the title to the land as against·one purchasing from the vendee with notice of the vendor's superior title. However, it specifically appears in that case that the sub-vendee and its general attorney had notice of the rescission and repossession by the vendor and did nothing about it. There is nothing in that opinion indicating that the original vendor ever knew of the sale by the vendee, or that it agreed to and induced the vendee to execute the conveyance. We agree with the holding in the Yett case as applied to the facts therein developed, but we do not think it is applicable to the undisputed facts here.

For reasons above indicated the judgment of the trial court is reversed and judgment is here rendered for appellants.