## McVAY v. TOUSLEY et al.

An instrument whereby the owners of land conveyed the same to the grantee as trustee to secure payment of a note excuted by the grantors to a third person, providing that "this mortgage or trust deed may be foreclosed by action," etc., and that a reconveyance of the premises was to be made at the expense of the grantor on full payment of the indebtedness, constituted a mortgage, and the rights of the parties were governable by the laws applicable to mortgages.

Where a conveyance, given to secure the payment of a note, provided for reconveyance of the premises by the grantee, as trustee for the payee of the note, on full payment of the indebtedness, a satisfaction of the indebtedness by such trustee, duly recorded, operated to discharge the mortgage lien, though the mortgage and note were not surrendered to the grantor, and to estop the assignee of such mortgage and note from claiming under the lien.

Under Rev. Code Civ. Proc. § 108, providing that an action shall be deemed to be pending from the time of the filing of the notice of lis pendens, and section 109, providing for the discharge of record of such notice, where a conveyance given as security for a note provided for a reconveyance of the premises by the grantee, as trustee, on payment of the indebtedness, and subsequent to the execution and recording of such reconveyance the assignee of the instrument and note brought an action of foreclosure thereon, but thereafter dismissed the same, the notice of lis pendens in such action being canceled of record, subsequent purchasers of the property acquired the same free of the lien of the mortgage, as against subsequent assignees thereof and of the mortgage note.

The filing of a statutory notice of lis pendens does not constitute constructive notice of anything more than the pendency of the action, and, when the action has ceased to be pending under the law of lis pendens, the statutory notice becomes ineffectual for any purpose.

(Opinion filed, Dec. 30, 1905.)

Appeal from Circuit Court, Turner County. Honorable E. G. SMITH, Judge.

Action by William H. McVay, as administrator, etc., against Frances L. Tousley and others. Judgment for plaintiff, and defendants appeal. Reversed.

*W. Y. Quigley* and *N. J. Cranmer,* for appellants.

A note providing for the payment of attorney's fees if suit be commenced to collect it or foreclose the trust deed, and the suit might be commenced on the note if default was made in the pay·ment of any coupon or interest, and to foreclose trust deed for failure to pay taxes, insure buildings, or perform any of the covenants

therein, or do, or fail to do anything whereby the security might be lessened. Those provisions made the note uncertain as to time and the amount of payment. Whitwell v. Winslow, 134 Mass., 343; Way v. Smith, 111 Id., 523; Stolts v. Silva, 119 Id., 137; Cushman v. Haynes, 37 Id., 132; Palmer v. Ward, 72 Id., 340; Mahoney v. Fitzpatrick, 133 Id., 151; Castello v. Crowell, 120 Id., 293; Hubbard v. Mosely, 77 Id., 170; Haskell v. Lambert, 82 Id., 592; Scallans v. Rawlins, 53 N. E. 863. A contract is to be determined according to the law and usage where it is to be performed or, if it does not indicate the place of performance, according to the law or usage where made. Civil Code, Sec. 393. Bigelow v. Burham, 83 Ia., 120, 32; 1 Daniel Neg. Instr. Secs. 879, 903-5; Ruhe v. Buck, 124 Mo., 46. The law makes it the duty of the assignee to give notice to the maker of the assignment and of their interest therein, to stop payment to the original owner or holder, and in the absence of such notice the payment to the original owner is good and the assignee can look to the assignor for the money received by him. The notice is a measure of precaution to put him on inquiry. 1 Daniel Neg. Instr. Sec. 742. Coupons are independent notes representing interest, and enables the holder to collect interest without presenting the note and to anticipate the interest by detaching and negotiating them before maturity of the interest they represent, and pass as separate and independent security. 2 Daniel Neg. Instr., Secs. 1488, 1491, 1510. 1 Dillion Municipal Corporations, Sec. 486 and note 3. Clark v. Iowa City, 87 U. S. 583. The rule requiring notice of assignment to prevent payment to the original owner is the same in Massachusetts as the other states. Jones v. Witter, 13 Mass., 304; Dunn v. Snell, 15 Id., 481; Greene v. Hatch, 12 Id., 195; St. John v. Charles, 105 Id., 262. Altered numbers on coupons attached to a bond is not notice of any defect or irregularity in the bond itself. Birdsall v. Russell, 29 N. Y. 220, 249. Notice of the assignment of a non-negotiable note or chose in action must be given to the debtor to stop payment to him, and payment to him will be good until notice is given. Foster v. Carson, 159 Pa. St. 447; Graham Paper Co. v. Pembroke, 124 Cal., 117; 1 Daniel Neg. Instr., Secs. 741, 742; Bank v. Jones, 65

Cal., 437; VanBuskirk v. Hartford F. D. Co., 14 Conn., 14. The notice may be actual or constructive. Civil Code, Sec. 2108; Lodge v. Simolton, 23 Am. Dec. 36; Converse v. Baumrich, 14 Mich., 109; Allen v. McCalla, 25 Ia., 464; Morrison v. Kelley, 22 Ill., 610; Hoy v. Bramhall, 19 N. J. E., 563; Knapp v. Bailey, 79 Minn., 195; State v. Mason, 112 Mo., 374; Bank v. Parsons, 40 Am. St., 299; Doran v. Daxy, 5 N. D., 167. They are all subsequent purchasers who relied upon the records relating to the title of said land, and are protected thereby. Pickford, v. Peebles, 7 S. D. 166; Livermore v. Maxwell, 55 N. W., 37; Day v. Brenton, 71 Id., 538. Lennartz v. Quilty, 60 N. E. 913; Whipple v. Fowler, 60 N. W., 15; Bullock v. Pock, 78 Id., 261; Whitney v. Low, 80 Id., 266; Citizens Bank v. Shaw, 84 Id., 779; Ahren v. Fruman, 48 Id., 677; Merrill v. Luce, 6 S. D., 354; Merrill v. Hurley, Id., 592; Jones on Mortgages, Sec. 957. The lis pendens gives notice during the pendency of the action, providing it is prosecuted to judgment. If the action be dismissed without trial or determination on the merits it is not a notice and does not affect subsequent purchasers or incumbrancers after the dismissal of the action. Pipe v. Jordan, 45 Pac., 371; Harrington v. McCollum, 73 Ill., 476; Hayes v. Nurse, 22 N. E. 40; Freeman on Judgments, 198, 203-206; 58 N. Y. S.

*Gamble, Tripp & Holman,* for respondents.

When the defendants attempted to settle with someone other than the legal owner, in order to have the same effectual, the duty devolves upon them of showing that the person with whom the settlement was made at the time had the right to receive the payment and make the settlement. Mulcahy v. Fenwick, 161 Mass. 164; Walter v. Logan, 65 Pac. 225; Livermore v. Maxwell, 55 N. W. 39; Stark v. Oleson, 63 N. W. 40; Dale v. Kingston, 46 Vt. 76. The discharge of mortgage must be of record not only where the whole debt is paid, but also where there are part payments and no partial discharge recorded. Brayley v. Ellis, 32 N. W. 254; Windell v. Bonebrake, 23 Fed. 167; Burhaus v. Hutchinson, 25 Kans. 625; Roberts v. Halstead, 9 Pa. St. 35; Keohane v. Smith, 97 Ill. 156.

HANEY, J. Early in 1886 the defendant Frances L. Tousley and R. C. Tousley, her husband, who resided in Turner county, Dakota Territory, now one of the counties of this state, and who owned certain real property therein, executed and delivered to J. M. Dunn, a loan broker of Le Mars, Iowa, a note for $1,000, payable to the order of P. M. Dunn, the wife of J. M. Dunn, at Boston on May 1, 1891, and the following instrument, which was duly acknowledged and recorded in the proper county: "This indenture, made this 15th day of March, 1886, by and between Frances L. Tousley and R. C. Tousley, her husband, of the county of Turner, territory of Dakota, party of the first part, and J. M. Dunn, of Le Mars, and state of Iowa, trustee, party of the second part, and P. M. Dunn, party of the third part, witnesseth: That said party of the first part for and in consideration of the sum of one thousand dollars, in hand paid by the said party of the third part, the receipt whereof is hereby acknowledged, have granted and sold, and do by these presents, grant, bargain, sell, convey and confirm unto the said party of the second part, or his successor in trust, forever, a certain tract or parcel of land situated in the county of Turner and territory of Dakota, described as follows, to-wit: * * * Provided, always, and these presents are upon the following express conditions, to-wit: That said party of the first part shall pay to the said party of the third part, his heirs or assigns, the sum of one thousand dollars, in gold coin of the United States, of present standard weight, value, and fineness, on the first day of May, A. D. 1891, with interest on said sum until paid, at the rate of seven per cent. per annum, payable semi-annually, on the first days of November and May in each year, according to the tenor and effect of the promissory note and coupons attached, of the said first party, dated March 15, 1886, payable at Boston, Mass. * * * It is further agreed, that if the party of the first part shall fail to perform any of the covenants in the note or in this instrument, or do, or fail to do anything whereby the security of this loan of money may be lessened, then this mortgage or trust deed shall become due and collectible at once at the option of the holder, and may be foreclosed for the full amount, together with interest, costs, taxes, insurance, and any other sums advanced

for expenses incurred on account of the party of the first part for whatsoever purpose and any advances so made shall draw interest at twelve per cent. per annum. · It is further agreed, that this mortgage or trust deed may be foreclosed by action, or by advertisement, as provided by chapter 28, of the Code of Civil Procedure of the Revised Code of Dakota, of 1877, and this paragraph shall be deemed as authorizing and constituting the power of sale as provided in said chapter; and it is agreed, should foreclosure be commenced, an attorney's fee of one hundred dollars shall be allowed for plaintiff's attorney and shall be collected as part of the costs of foreclosure. * * * Finally, the said first party hereby expressly agrees to comply with and perform all the foregoing conditions, and upon compliance therewith these presents to be void, otherwise to be and remain in full force and effect, and in case of the death, absence, inability or refusal to act of said party of the second part, then David W. Morris, of Grinnell, Iowa, shall be and is hereby appointed and made successor in trust to the trustee hereinbefore named, with like powers and authority. A reconveyance of the premises is to be made at the expense of the party of the first part on full payment of the indebtedness."

On December 9, 1887, the Tousleys paid J. M. Dunn $1,074.10 to extinguish their obligation, receiving the following instrument, which was duly acknowledged and recorded in the proper county on December 12, 1887: "Release Deed. Know all men by these presents, that I, J. M. Dunn, trustee, of the county of Plymouth and state of Iowa, for and in consideration of one dollar, and for other good and valuable considerations, the receipt whereof is confessed, do hereby remise, convey, release and quitclaim, unto Frances L. Tousley and husband, of the county of Turner and territory of Dakota, all the right, title, interest, claim, or demand whatsoever I may have acquired in, through, or by a certain trust deed, bearing date the 15th day of March, A. D. 1886, and recorded in the recorder's office of Turner county, in the territory of Dakota, in Book K of Land Mortgages, page 23, to the premises herein described as follows, to-wit: The northwest quarter of section No. fifteen, in township ninety-nine, north, of range No. fifty-four west,

of the 5th P. M., together with all the appurtenances and privileges thereunto belonging or appertaining. Witness my hand and seal this ninth day of December, A. D. 1887. J. M. Dunn, Trustee. [Seal]."

Prior to the execution and recording of this instrument the note and trust deed or mortgage had been transferred by the Dunns to John Jeffries & Sons, by them to Michael O'Brien, and by him to Timothy O'Brien, the plaintiff's testator; all of such transferees being residents of Massachusetts. Subsequent to the execution and recording of the trustee's reconveyance or release—the instrument last above set forth—no assignment of the trust deed or mortgage having been recorded, the defendant Vander Wilt acquired title to the mortgaged premises, and the defendant Brown acquired title to a mortgage thereon for value, without notice of Jeffries & Sons', Michael O'Brien's, or Timothy O'Brien's rights, except as the same may have been disclosed by the records of the county where the land was situated. Thereafter this action was instituted to foreclose the trust deed or mortgage, resulting in a judgment in favor of the plaintiff, from which, and an order denying their application for a new trial, the defendants Vander Wilt and Brown appealed.

This so-called trust deed is substantially the same in form as the one in Langmaack v. Keith, 20 S. D. 103 N. W. 210, concerning which this court said: "The writing signed by the owner of the land is only evidence of what the parties intended. It is immaterial what name may have been given such writing. The parties made a contract. The contract was a mortgage, and it must be governed by the rules of law applicable to such a contract. The owner of the land was the mortgagor, the payee of the bond or original owner of the indebtedness was the mortgagee, and the transferee of the indebtedness must be regarded as the assignee of the mortgage." So in this case Mrs. Tousley must be regarded as the mortgagor, Mrs. Dunn as the mortgagee, Jeffries & Sons, Michael O'Brien and Timothy O'Brien as transferees in the order named, and J. M. Dunn as an unnecessary and unfortunate party to the paper, upon the extent of whose authority depends the solution of the perplexing problems presented by this and other actions resulting from his misconduct. When J. M. Dunn received the mortgagor's money

and executed the reconveyance or release, the indebtedness was owned by the plaintiff's testator, the note and mortgage were in his possession, and he neither knew of that instrument's execution, nor did he or his personal representative ever receive the money so collected by the trustee. The Tousleys may have been negligent in paying Dunn without insisting upon a surrender of the note, but that is not material, if the appellants were protected by the record upon which they relied when their rights were acquired. "Where a mortgage is made, title remains in the mortgagor, and the rights of the creditors are to be enforced by foreclosure in one of the methods prescribed by the statutes." Langmaack v. Keith, supra. Had the mortgagor in this case made default, her title could not have been extinguished otherwise than by one of those methods. The trustee was not authorized to sell and convey the premises upon the mortgagor's failure to perform her obligations. A lien was created, the enforcement of which was provided for by the law and no trustee was needed.

But what were his powers and duties in the event of payment? The mortgage declares: "A reconveyance of the premises. is to be made at the expense of the party of the first part on full payment of the note." By whom? Evidently the trustee. Though, title did not pass, and no reconveyance was necessary, the mortgage lien was created by words purporting to convey the title, and authority to reconvey should be construed as authority to release the lien. Inapt and inappropriate language was employed to create the lien and to provide for its extinguishment, but there can be no doubt as to the real intent of the parties and the legal effect of the contract. A mortgage was made by the purported conveyance of the premises to a trustee, and was to be released by a purported reconveyance of the same. So it follows that the trustee was authorized by the terms of the mortgage to extinguish the lien upon full payment of the indebtedness, and, if the owner of the indebtedness had received the amount paid by the Tousleys, the mortgage certainly would have been properly satisfied. In other words, the mortgage lien was released of record in the manner authorized by the instrument which gave it existence, and the record upon which

the appellants relied when their rights were acquired disclosed that authority.

Can the assignee of the mortgage, the owner of the indebtedness, be heard to say, as against purchasers and incumbrancers for value, that the debt was not in fact paid? Purchasers and incumbrancers for value, without notice other than is given by the records, are protected by the satisfaction of a mortgage executed by the mortgagee, where there is no assignment of the mortgage on record, though the debt was transferred prior to the recording of such satisfaction and the transferee has not been paid. Citizens' Bank v. Shaw, 14 S. D. 197, 84 N. W. 779. This is so because the record discloses a discharge of the mortgage by one appearing from the record itself to be authorized to discharge it. It is a just rule because the assignee of a mortgage may protect his rights by recording an assignment. "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer." Rev. Civ. Code, § 2442. Any other rule would render the recording of satisfactions ineffectual and valueless. "Where the reason is the same, the rule should be the same." Id. § 2410. The record upon which appellants relied disclosed a mortgage which had been satisfied by the person and in the manner authorized by the instrument itself. Had Timothy O'Brien received the money paid to Dunn, the record would have been the same. It, was not so received. Who shall suffer? Had no trustee been named, and P. M. Dunn, the mortgagee, had executed the release, the assignee could not enforce the lien because he failed to record an assignment, because the mortgage was released by the person appearing to have authority to release it. Langmaack v. Keith, supra. This plaintiff cannot enforce the lien, because it was discharged by the person appearing of record to have authority to discharge it. Having accepted security which clothed J. M. Dunn with authority to release it, and having provided the opportunity for him to make a record which induced the appellants to part with their property, the assignee of this mortgage should now be estopped from claiming any lien upon the premises in question. It is therefore immaterial whether the mortgagee in fact authorized the release, or wheth-

er the note was negotiable in this state, Iowa, or Massachusetts. The right of the plaintiff to recover upon the note as against the makers is not involved. We are dealing with the effect of this recorded satisfaction, which must be determined by the law of this state. As against the appellants, such satisfaction extinguished the mortgage lien, and it should have been so adjudged in the court below, unless they are to be charged with record notice of plaintiff's rights by reason of an action instituted by Michael O'Brien on May 31, 1890.

It appears from the decision of the learned circuit court that the Tousleys, in consideration of $1,650, conveyed the mortgaged premises by warranty deed to Truman Hall, December 8, 1887, which deed was recorded December 9, 1887; that Hall and wife, in consideration of $3,000, conveyed the premises by warranty deed to Edward J. Gotthelf, May 6, 1899, which deed was recorded May 6, 1902; that Gotthelf and wife, in consideration of $3,500, conveyed the premises by warranty deed to C. Van de Steog, Jr., July 26, 1899, which deed was recorded August 9, 1899; that Van de Steog, Jr., and wife, in consideration of $2,750, mortgaged the premises to E. J. Gotthelf, July 26, 1899, which mortgage was recorded August 9, 1899; that Gotthelf, in consideration of $2,750, assigned said mortgage to C. W. Davis, March 23, 1900, which assignment was recorded March 24, 1900; that Davis, in consideration of $2,000, assigned said mortgage to the defendant and appellant Brown, March 15, 1901, which assignment was recorded March 15, 1901; that Van de Steog, Jr., and wife, in consideration of $3,500, conveyed the premises by warranty deed to H. Van Pelt March 14, 1900, which deed was recorded March 17, 1900.; that Van Pelt and wife, in consideration of $4,000, conveyed the premises by warranty deed to the defendant and appellant Vander Wilt, December 24, 1900, which deed was recorded December 29, 1900; and "that at the time the said Truman Hall and other grantees and mortgagees under him, above named, took their conveyances, mortgage, and assignments thereof, none of them had any notice of the rights of the said Michael O'Brien or his assigns, plaintiff's testator, other than as was disclosed by the public records of this

county." It also appears from the decision that Michael O'Brien commenced an action to foreclose the mortgage sought to be foreclosed in this action May 31, 1890, making the defendants Frances L. and R. C. Tousley parties defendant therein; that in said action on said date he filed a complaint in the proper court, and a notice of the pendency of said action in the office of the register of deeds of the proper county; and that, no trial of said action ever having taken place, on motion of the plaintiff's attorneys, the same was dismissed by an order filed and entered of record February 2, 1897. Though not alluded to by the circuit court in its decision, it appears from the evidence there are no marginal notations on the lis pendens record where notice of pendency of the O'Brien action is recorded, "but on the left-hand side of the page, said book being in the form of a double page, there is found this order of the court, under the title of the case: 'The above entitled action having been dismissed by the plaintiff herein, now, on motion of N. J. Cramer, attorney for the defendants in this action, excepting J. M. Dunn, it is hereby ordered that the notice of pendency of said action, filed in the office of the register of deeds of the county of Turner and territory of Dakota, now state of South Dakota, be, and the same is, hereby canceled of record, and the register of deeds of said county of Turner is hereby ordered and directed to cancel of record said notice of pendency of said action in his office upon a certified copy of this order being filed in his office. Dated March 2, 1897. By the Court: E. G. Smith, Judge. Attest: R. J. Way, Clerk.' And then follows the certificate of the clerk, and the same appears to have been filed in the office of the register of deeds, March 10, 1897. Said order is a certified copy of the original order recorded in the clerk's office dismissing the lis pendens, and filed in the register of deeds' office March 10, 1897, at 4 o'clock p. m."

Hall, the immediate grantee of the mortgagor, may not have been a bona fide purchaser because his rights were acquired prior to the executing and recording of the release, but the appellants and all the parties subsequent to Hall, through whom appellants' rights were derived, purchased for value, relying upon the recorded release, without notice of the outstanding equity now sought to be

established other than what the law imputed to the pendency of the O'Brien action, which was commenced and dismissed before Hall's immediate grantee acquired the property. When Gotthelf and his grantees, including the appellants, purchased the premises, the record disclosed a canceled notice of pendency containing the names of the parties, the object of the action, and a description of the property affected. The object of the action was to cancel the Dunn release and foreclose the mortgage. If any one had read the notice and pursued the inquiry it suggested, he would have found this order made by the court where the action was formerly pending: "Now, on motion of R. J. Gamble and R. B. Tripp, attorneys for the plaintiff in the above-entitled action, it is hereby ordered that the same action be, and the same is, hereby dismissed at the cost of the plaintiff, and with costs to the defendant, Truman Hall." Would he not have been justified in concluding that the O'Brien claim was either settled or abandoned? The dismissal was on motion of the plaintiff. Neither party could maintain an appeal. The right to bring another suit for the same cause, though it may have remained, was not expressly reserved. Every thing indicated that the litigation was ended, and, if it was, an additional persuasive reason was disclosed by the record for believing that the mortgage was satisfied. This condition of the record had existed for more than two years when the appellants acquired their rights. Under the rules relating to constructive notice, this canceled notice of pendency should be regarded as strengthening rather than weakening appellant's position.

But the precise question here involved is not one of constructive notice. The notice of pendency of action provided for by our statute (Rev. Code Civ. Proc. §§ 108, 109) is merely intended to afford a convenient and effectual method of enforcing the common-law doctrine of lis pendens, the theory of which is "that there can be no innovation in the proceedings so far as to prejudice the rights of the plaintiff." Lis pendens is simply a rule to give effect to the rights ultimately established by the judgment. Kohn v. Lapham,

13 S. D. 78, 82 N. W. 408; Lamont v. Cheshire, 65 N. Y. 30. It merely precludes any change in the subject-matter to the prejudice of the plaintiff during the pendency of the action, and the filing of the statutory notice is designed to effect that result, not to give constructive notice of the plaintiff's claim as does the recording of a deed or mortgage. Whatever effect actual notice of a pending action may have, it is clear that the filing of a statutory notice of pendency does not constitute constructive notice of anything more than the pendency of the action, and, when the action has ceased to be pending under the law of lis pendens, the statutory notice ceases to be effectual for any purpose. In a case analogous to the one at bar the Supreme Court of Colorado correctly states the purpose and effect of such a notice thus: "The office it had to perform was to give constructive notice of the former suit to all purchasers *pendente lite,* and thereby bind them by any decree that might be rendered therein. In other words, its purpose was to prevent any alienation of the subject-matter in litigation, pending the action, that could prejudice the plaintiff's rights, or impair or defeat any interest she should establish as against the defendants in the suit, and does not constitute such notice of plaintiff's equity as would affect the conscience of a purchaser." Pipe v. Jordan, 22 Colo. 392, 45 Pac. 371. The former suit having been dismissed, and no final judgment rendered against the defendant therein, more than two years having elapsed when appellants acquired their rights, and as the present action cannot be regarded as a revival or continuation of the former one, it is clear that appellant's cannot be affected by the record of the O'Brien action. So, in any view of the facts as found by the learned circuit court, we think the appellant's were purchasers for value without notice, and that their rights are paramount to those of the plaintiff...

The judgment and order appealed from are reversed.