BLACKWOOD *v.* DAVIDSON.

4-5571                                             132 S. W. 2d 799

Opinion delivered October 16, 1939.

1056

*Jesse Taylor* and *W. Leon Smith,* for appellant.

*Frank C. Douglas,* for appellee.

MEHAFFY, J.   In 1930, W. S. Davidson was the owner of 160 acres of land in Mississippi county, Arkansas. J. R. Crowe was the owner of 320 acres of land in Arkansas county, Arkansas, subject to an indebtedness of $7,000. Davidson and Crowe entered into a contract to exchange lands. Davidson agreed to assume the indebtedness due on the Crowe lands, and Crowe to remain in possession of said lands for three years, but to execute a note for the rental thereof for the third year in the sum of $3,600. The contract was not recorded and no reference was made to it in the deeds between Crowe and Davidson.

On June 19, 1930, Davidson executed and delivered to Crowe his warranty deed conveying the lands in Mississippi county to Crowe, the consideration mentioned in the deed being the sum of $1 paid and exchange of land between Davidson and Crowe. This deed was recorded at the recorder's office in Blytheville on June 23, 1930.

On May 8, 1931, J. R. Crowe, being indebted to Dwight H. Blackwood in the sum of $4,000, evidenced by his promissory note, executed and delivered to Blackwood a deed of trust in the execution of which his wife joined, conveying to Blackwood the real property located in Mississippi county which he had acquired by warranty deed from Davidson.

Blackwood had no knowledge, either actual or constructive, at the time he loaned the money to Crowe and took the deed of trust from him, of any claim which Davidson might have against said land by the unrecorded contract.

Crowe failed to execute the rental note and on October 15, 1932, Davidson filed suit in the chancery court of Chickasawba district of Mississippi county, Arkansas, against Crowe in which he sought to have a vendor's lien declared on the Mississippi county property to enforce the payment of the $3,600 due Crowe and filed *lis pendens* notice. Blackwood had no knowledge of the claim of Davidson, and was not made a party to the suit by Davidson to enforce the lien.

Blackwood's mortgage was filed for record January 3, 1933. Davidson knew of the mortgage before it was filed and knew of it when he began suit against Crowe. After Blackwood's mortgage was filed and recorded, Davidson was given a decree against Crowe and a lien declared on the land. Davidson purchased the land at the commissioner's sale.

Payments had been made to Blackwood by Crowe from time to time, and on August 5, 1938, Blackwood brought this suit against Crowe and Davidson to secure judgment for the balance due him and to enforce his mortgage lien. He filed and there was recorded, a *lis pendens* notice.

In April, 1938, Davidson entered into a contract with one H. H. Hardesty to sell the lands in Mississippi county, and received payment of $500.

After Blackwood had filed suit, Davidson filed answer setting up the suit which he had brought against

Crowe, the decree, sale, and purchase of said land under said decree, and further pleaded the statute of limitations. The chancellor rendered a decree against Crowe in favor of Blackwood for the amount due, principal and interest, and dismissed the complaint as to Davidson. The case was tried on the following evidence, which was agreed to by the parties as evidence:

"1. That the land involved in this cause of action is the northeast quarter (NE¼) of section thirty-four (34), township sixteen (16) north, range twelve (12) east of Mississippi county, Arkansas.

"2. That in 1930 this land was owned by the defendant, W. S. Davidson, and in May, 1930, Davidson entered into a contract with J. R. Crowe to exchange this land to said Crowe for some other lands in Prairie county, Arkansas, and as a part of the consideration for the exchange and transfer, Crowe agreed to pay Davidson, $3,600, which was to be represented by a note to be executed by said Crowe, and said amount was also to cover the rental on the Prairie county land for one year. Crowe failed to execute his note or make his payment as per his contract. On June 19, 1930, Davidson (without his wife's joining) conveyed the above described lands to Crowe for a recited consideration of '$1 to me paid and the exchange of lands between myself and J. R. Crowe,' said deed now being of record in the recorder's office in Blytheville, Arkansas, where the same now appears of record in Deed Record 59, page 399, having been filed for record on the 23rd day of June, 1930.

"3. On May 8, 1931, the defendant, J. R. Crowe, was indebted to the plaintiff, Dwight H. Blackwood, in the sum of four thousand dollars ($4,000) as evidenced by a promissory note of said date due six months after date and bearing interest from maturity at the rate of ten per cent. per annum until paid; that to secure said indebtedness the defendant, J. R. Crowe and his wife, Hazel Crowe, executed on the 8th day of May, 1931, a mortgage conveying the above described property to the said Dwight H. Blackwood which said mortgage was filed for record on the 3rd day of February, 1933, where

the same now appears of record in trust deed record W-1 at page 310 in the recorder's office in Blytheville, Arkansas.

"4. That Crowe failed to execute the note for three thousand six hundred dollars ($3,600) to Davidson and failed to pay the said amount, and that on October 15, 1932, Davidson filed suit in the chancery court for the Chickasawba district of Mississippi county, Arkansas, in which he sought to obtain judgment against Crowe in said sum and to have a vendor's lien declared on the property, and at the same time filed *lis pendens* notice which appears in *Lis Pendens* Record No. 2, at page 138, in the recorder's office in Blytheville, Arkansas. At the time this suit was filed, Blackwood had not filed his deed of trust from J. R. Crowe and his wife, Hazel Crowe, but did file the same on the 3rd day of February, 1933.

"5. At the time of the execution of the deed from Davidson to Crowe, the above described property was unencumbered, and at the time of the execution and delivery of the deed of trust from Crowe and wife to Blackwood said property was unencumbered except whatever right Davidson may have had to enforce his claim against Crowe for the three thousand six hundred dollars ($3,600).

"6. On the note given by J. R. Crowe to the plaintiff, Dwight H. Blackwood, the following payments have been made:

| | |
|---|---|
| September 8, 1935 | $200.00 |
| January 8, 1936 | 650.00 |
| February 8, 1936 | 250.00 |
| March 8, 1936 | 350.00 |
| July 8, 1938 | 500.00 |

None of these payments have been noted upon the margin of the record of the deed of trust securing this indebtedness as said deed of trust appears in Trust Deed Record W-1, at page 310.

"7. That on the 5th day of August, 1938, the plaintiff, Dwight H. Blackwood, filed this suit to foreclose his mortgage, and at the same time filed *lis pendens*

notice which appears in *Lis Pendens* Record 2, at page 375, in the recorder's office in Blytheville, Arkansas.

"8. That Crowe contested the suit filed by Davidson, and a receiver was appointed to take charge of and rent land; that decree was rendered in favor of Davidson in said suit on September 25, 1933, and on appeal to the Supreme Court, by Crowe, the case was affirmed and the opinion of the court now appears in 189 Ark. 414, 72 S. W. 2d 763. Thereafter the land was duly advertised by the commissioner appointed by the court, and at the sale, conducted by the commissioner, on the 26th day of February, 1934, Davidson became the purchaser at said sale for a consideration of three thousand seven hundred fifty dollars ($3,750) which sale was by this court confirmed and the commissioner's deed executed and approved by the court.

"9. That on the same day that Davidson conveyed the above described property to Crowe, Crowe executed and delivered to Davidson a warranty deed conveying the property in Prairie county, Arkansas, to Davidson according to the terms of the contract.

"10. That the contract to exchange lands between Davidson and Crowe was not filed for record, and that, Blackwood had no knowledge, actual or constructive, of the existence of said contract at the time of the execution and delivery to him of the trust deed by Crowe and his wife conveying said property; that at about the time Blackwood filed his mortgage for record in the Chickasawba district of Mississippi county, Arkansas, he knew of the suit pending by Davidson against Crowe, but he did not make himself a party thereto, and that, at said time the note from Crowe to Blackwood was past due and no payments had been made thereon; that at the same time Davidson had actual knowledge of the existence of the indebtedness from Crowe to Blackwood and of the mortgage given by Crowe to Blackwood to secure the same, but that Blackwood was never made a party to the suit by Davidson against Crowe. That Blackwood and counsel for Davidson discussed the sale of

said land, and that Blackwood knew of the sale of the land under the Davidson decree against Crowe, and that Blackwood also knew that Davidson's wife had not relinquished dower and homestead in the deed from Davidson to Crowe; that Blackwood further knew that Davidson took possession of the land after he purchased at the commissioner's sale, and that Davidson is now in possession of said land.

"11. That either party herein may submit any record or documentary evidence in reference to this case, and that copies of the same may be filed and treated in evidence the same as though the original records thereof are introduced.

"12. That on April 30, 1938, the defendant, W. S. Davidson, entered into a contract with H. H. Hardesty to sell the said land to the said H. H. Hardesty, and the said H. H. Hardesty paid the sum of five hundred dollars ($500) to the said W. S. Davidson. That said contract has never been placed of record. That the value of said lands is fifteen thousand dollars ($15,000). That the balance due Blackwood, principal and interest, on the note executed by Crowe to Blackwood at the time of the filing of the suit the sum of four thousand seven hundred forty-nine dollars and ninety-eight cents ($4,749.98)."

Paragraph 10 of the agreed statement of facts recites that the contract to exchange lands between Davidson and Crowe was not filed for record, and that Blackwood had no knowledge, actual or constructive, of the existence of said contract at the time of the execution and delivery to him of the trust deed by Crowe and his wife conveying said property.

J. R. Crowe and Hazel Crowe, his wife, filed separate answers admitting the execution of the note and the mortgage securing same.

Paragraph 11 of the agreed statement of facts provides that either party herein may submit any record or documentary evidence in reference to this case, and copies of the same may be filed and treated in evidence the same as though the original records thereof are in-

troduced. The record, however, does not show that either party introduced any other record or documentary evidence except that to which attention is called herein.

Appellee calls attention to the case of *Green* v. *Maddox*, 97 Ark. 397, 134 S. W. 931, and the case of *Webb* v. *Alexander*, 195 Ark. 727, 113 S. W. 2d 1095. In these cases it was stated: "No rule is better settled than this, that one is bound by whatever, affecting his title, is contained in any instrument through which he must trace title, even though it be not recorded, and he have no actual notice of its provisions."

In this connection it may be stated that Blackwood had no knowledge of the contract executed by Crowe and Davidson, and that the deed from Davidson to Crowe not only does not retain a lien for the purchase money, but on the contrary, indicates the entire purchase price has been paid. But Davidson did have actual knowledge of the mortgage from Crowe to Blackwood and Crowe had made the payments above set out in the agreed statement of facts.

The chancellor entered a judgment in favor of Blackwood against Crowe for the amount due on the note and mortgage, but held that Blackwood's complaint should be dismissed as against Davidson, and the title to the property involved be quieted in Davidson, and that Davidson recover his costs against Blackwood.

Davidson executed a deed, which indicated that the purchase money had been paid, and, at the same time, had a secret written agreement of which Blackwood knew nothing for $3,600. He knew that Blackwood took a note and mortgage, and yet never intimated to Blackwood at any time that he had any claim or lien on the land or that the purchase price was not paid.

Appellee says that, if Blackwood did not have actual knowledge of the terms and conditions when he took his mortgage from Crowe, these records certainly should have put him on notice to make inquiry. No record that Blackwood knew anything about would put him on inquiry, because the deed which was recorded indicated the

payment of the purchase price. It is true that David-son's wife refused to sign the deed, but the only thing that this would be notice of to Blackwood, was that she had not relinquished her dower rights, and certainly it was no notice to make inquiry of a secret agreement of which he had never heard.

It is true, the record recites, that Crowe was in-debted to plaintiff; that is, the mortgage recites this; and he certainly was, because he had just executed and de-livered to Blackwood his promissory note, and the pur-pose in executing the mortgage was to secure the pay-ment of this note. There is no intimation in the record anywhere that the indebtedness existed before he exe-cuted the note.

Appellee argues that it is shown that it was an ex-isting indebtedness by the transcript and record in the case of *Davidson* v. *Crowe,* 189 Ark. 414, 72 S. W. 2d 763; but Blackwood was not a party to this suit, and was not bound by anything decided there. Blackwood knew that Davidson had sued Crowe, but he was not made a party, and is, therefore, not bound.

It is also argued that the land was of little value at that time, but increased in value until it is now worth $15,000. We fail to find any evidence indicating that it was of little value, or that it has greatly increased in value. This may be true, but there is no evidence of it.

There was no lien retained in the deed from David-son to Crowe, and Davidson had not acquired any lien when Blackwood's mortgage was recorded. It is true that, when Davidson filed his suit against Crowe, he filed a *lis pendens* notice. This court has held that the *lis pendens* notice will not have the effect to deprive the purchaser of his title or give the persons filing such notice superior right or title, and he cannot acquire any greater right in the property than the defendant had at the time the *lis pendens* notice was given. *Oil Fields Corp.* v. *Dashko,* 173 Ark. 533, 294 S. W. 12.

In other words, by filing the *lis pendens* notice, Davidson acquired no greater right in the property than Crowe had at that time.

1064

While it is true that equity aids the vigilant, yet in this case Davidson knew all about Blackwood's mortgage and kept secret from Blackwood the contract that he had made for the $3,600.

Appellee calls attention to the cases of *Connelly* v. *Hoffman*, 184 Ark. 497, 42 S. W. 2d 985, and *Buckner State Bank* v. *Stager*, 195 Ark. 1072, 115 S. W. 2d 1076. In each of those cases, the court held that the second mortgagee was a third party, and there were no payments made and indorsed on the margin of the record before the bar of the statute attached. The statute requiring indorsement of payments or memorandum of same on the margin of the record, has no application in this case.

In this case, Davidson was a purchaser at his own sale in the foreclosure of a vendor's lien, which lien was not retained in the deed.

"A *bona fide* purchaser at a judicial sale is affected, to the same extent as the person whose title he buys, by an estoppel *in pais* which prevented the latter from asserting title." 16 R. C. L. 138.

In *Robb* v. *Hoffman*, 178 Ark. 1172, 14 S. W. 2d 222, we said: "In other words, the purchaser at a mortgage foreclosure sale steps into the shoes of the mortgagee in the mortgage foreclosed, and is entitled to all the rights such mortgagee had under the mortgage."

In the case of *Citizens Bank & Trust Co.* v. *Garrott*, 192 Ark. 599, 93 S. W. 2d 319, this court said: "Perhaps there is no better known principle than the application of the rule of *caveat emptor* and particularly to a creditor purchasing at his own execution sale."

It is contended, however, that because of Blackwood's silence he is estopped now to assert his claim. There was nothing that Blackwood could have told Davidson that Davidson did not already know. He could have told Davidson that he had a mortgage to secure a debt, but this Davidson already knew.

The evidence in this case shows that Davidson knew everything about the mortgage to Blackwood, and that Blackwood knew nothing of the secret contract under

which Davidson claims a vendor's lien. There is no claim made by Davidson that Blackwood's acts or his silence induced him to change his conduct or to make his contract with Hardesty.

Since Davidson knew of Blackwood's note and mortgage, and since his deed indicated payment of the purchase price, he cannot now assert a claim under a contract that was not of record, and about which Blackwood knew nothing.

We gather from the opinion of the lower court that the court held that Blackwood's claim was barred by the statute of limitations, because no entries of payments were made on the record. But Davidson was not a third party, and the statute has no application. It is agreed that the payments above set out were made, and the claim was not barred. Moreover, it appears that the property is worth $15,000. It is agreed that it is worth that amount. Therefore, after paying Blackwood's claim, there will be more than enough to pay Davidson's claim.

It is contended by the appellee that on April 28, 1938, he made a contract with one H. H. Hardesty to sell the property involved in this suit and agreed to borrow $8,000, Davidson to get this $8,000 and Hardesty to assume this as a part of the consideration. He paid $500 cash.

But that contract provided: ''If the title is approved by the loan company, it shall be considered as being satisfactory and acceptable by second party; if the title is not approved and the loan made, then first parties agree to refund the $500 earnest money paid by second party.''

There was no defect in the title except that Davidson evidently thought that Blackwood's lien might be prior to his, and this is the reason for inserting this clause in the contract. But this did not put him in any worse position, and nothing that Blackwood did or failed to do could possibly have influenced him in making this contract.

1066

If his condition is changed at all, it is changed by reason of the value of the property, the fact that he could pay Blackwood's claim and still have more than enough to satisfy his own claim.

There is no estoppel because of this contract. This in no way affected Davidson; he knew what Blackwood's mortgage was, the amount of it, and knew that if Blackwood's claim was superior to his he could still carry out the contract with Hardesty, satisfy Blackwood's claim, and give a good title to the land.

The decree of the chancery court is, therefore, reversed, and the cause is remanded with directions to enter a decree foreclosing Blackwood's mortgage, and holding that his lien is prior to the lien of Davidson.

SMITH, J., dissents.

SMITH, J. (dissenting). The facts in this case are not intricate and all appear from the stipulation as to the facts signed by the parties.

They are to this effect. On June 19, 1930, to effect an exchange of lands, Davidson conveyed to Crowe the tract of land he was exchanging, which tract of land so conveyed is situated in Mississippi county. Crowe did not pay the sum of $3,600 which was a part of the consideration, and suit was brought to declare and foreclose a vendor's lien. This suit was brought in Mississippi county, in which county the land is located on which it was sought to enforce a lien. Crowe, who was a resident of Arkansas county, sought prohibition against the Mississippi chancery court, on the ground that he had not been sued in the county of his residence. This writ was denied. *Crowe* v. *Futrell*, 186 Ark. 926, 56 S. W. 2d 1030.

Thereafter, the foreclosure suit proceeded to decree, and it was adjudged that a lien existed in Davidson's favor for the unpaid purchase money, and the decree directing the foreclosure of this lien was affirmed upon the appeal to this court. *Crowe* v. *Davidson*, 189 Ark. 414, 72 S. W. 2d 763. It would appear, therefore, not to be open to question that Davidson did have a lien when he filed the suit to foreclose it.

Davidson filed this suit to foreclose his lien on October 15, 1932, and it is stipulated that notice *lis pendens* was properly given. On May 8, 1931, Crowe executed a mortgage to Blackwood, but Blackwood did not file his mortgage for record until January 3, 1933, at which time Davidson's foreclosure suit was pending and his lien protected by the *lis pendens* notice.

The statement in the majority opinion that Davidson kept secret from Blackwood the fact that $3,600 of the purchase money had not been paid, is based solely upon the tenth paragraph of the agreed statement of facts that "Blackwood had no knowledge, actual or constructive, of the existence of said contract at the time of the execution and delivery to him of the trust deed by Crowe and his wife conveying said property." It is not intimated, either in the transcript or in the briefs of counsel, that Davidson concealed any fact from Blackwood. It is stipulated only that Blackwood was unaware of Davidson's lien when he took the mortgage.

Blackwood had no lien on this land until he filed his mortgage for record. Section 9435, Pope's Digest, reads as follows: "Every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time the same is filed in the recorder's office for record, and not before; which filing shall be notice to all persons of the existence of such mortgage."

Blackwood's mortgage did not, therefore, constitute a lien as against Davidson, a third party, until it was filed for record. *Thornton* v. *Findley*, 97 Ark. 432, 134 S. W. 627, 33 L. R. A., N. S., 491.

It has been frequently held that, while a mortgage is good between the parties, though not acknowledged and recorded, it constitutes no lien upon the mortgaged property as against strangers unless it is acknowledged and filed for record, even though they may have actual notice of its existence. *Main* v. *Alexander*, 9 Ark. 112, 47 Am. Dec. 732; *Jacoway* v. *Gault*, 20 Ark. 190, 73 Am. Dec. 494; *Ringo* v. *Wing*, 49 Ark. 457, 5 S. W. 787; *Leonhard* v. *Flood*, 68 Ark. 162, 56 S. W. 781; *Smead* v. *Chandler*, 71 Ark. 505, 76 S. W. 1066, 65 L. R. A. 353; *Rhea* v. *Planters'*

*Mutual Ins. Assn.*, 77 Ark. 57, 90 S. W. 850; *Morgan* v. *Kendrick*, 91 Ark. 394, 121 S. W. 278; *Western Tie & Timber Co.* v. *Campbell*, 113 Ark. 570, 169 S. W. 253, 134 Am. St. Rep. 78. There are later cases to the same effect.

Blackwood's mortgage did not, therefore, become a lien as against Davidson until January 3, 1933, the date on which it was filed for record. It was then as much a lien, but not more so, than if it had been executed, acknowledged and recorded on January 3, 1933. But on that date Davidson's foreclosure suit was pending, and was protected by the *lis pendens* notice.

The case of *Oil Fields Corporation* v. *Dashko,* 173 Ark. 533, 294 S. W. 25, discussed the purpose and effect of the *lis pendens* notice. It was there said: "The effect of filing for record of the *lis pendens* notice, under the statute, is to protect the rights of the plaintiff in the action against those who may acquire title to or liens on the property from the defendant after the *lis pendens* notice has been filed for record. The filing for record of the *lis pendens* notice cannot have the effect to deprive *bona fide* purchasers of the property purchased before notice of *lis pendens* was filed for record. If one in good faith purchases real estate from a defendant in an action before the filing for record of the *lis pendens* notice, a failure to record the evidence of his title thus acquired until after the *lis pendens* notice has been filed for record will not have the effect to deprive him of his title or give the plaintiff in the action superior right or title. The plaintiff in the action, by recording the *lis pendens* notice, cannot acquire any greater right in the property than the defendant had therein at the time the *lis pendens* notice was filed. In other words, a *lis pendens* notice operates prospectively to preserve all the rights of the plaintiff as against the defendant in the litigation from the time the *lis pendens* notice is filed for record. But it cannot operate retroactively to divest the title of one to whom the defendant had conveyed the property prior to the filing of the *lis pendens* notice for record, even though such person has not recorded his muniment of title until after the filing for record of the *lis pendens* notice."

Now, of course, as the *lis pendens* notice operates prospectively only, recording that notice could not operate to deprive Blackwood of any lien which he then had; but at that time he had no lien, as he had not recorded his mortgage. The equities of the case are with Davidson. He had a vendor's lien before Blackwood took his mortgage. That Davidson did have a lien is the point expressly decided in the case of *Crowe* v. *Davidson*, hereinabove cited, and suit to enforce this lien had been filed with proper *lis pendens* notice long before Blackwood filed his mortgage for record.

The effect of the majority opinion is to hold this unrecorded mortgage superior to this vendor's lien, notwithstanding suit to enforce the vendor's lien was pending, with proper *lis pendens* notice of record before the mortgage was filed for record which, I think, should not be done, and I, therefore, respectfully dissent.