DAVE ELLIOTT ET AL v. FRANK ELLIOTT ET AL

5-5801                                    482 S.W. 2d 123

Opinion delivered July 3, 1972

M. C. Lewis Jr., U. A. Gentry and John E. Coates, for appellants.

Hall, Tucker & Lovell, for appellees.

JOHN A. FOGLEMAN, Justice. This case arises from a dispute between two factions of the Elliott family, ignited by discovery of oil on Texas lands. The appellants (defendants below) have classified themselves as the Dale Elliott faction and the appellees as the Frank Elliott faction. We will occasionally do likewise. Their ancestors, I. J. and

Metta Elliott, acquired a large quantity of land, some of which was in Texas in Taylor and Ward Counties. The Ward County lands were owned by the maternal ancestor, who acquired them by inheritance. The Taylor County lands were community property of the maternal and paternal ancestors. The paternal ancestor predeceased his wife. In a family gathering shortly thereafter Metta Elliott expressed her desire that when a division of the estate was made after her death, those who acquired the Texas lands would agree that if oil was later discovered on these lands, the mineral rights would be divided between the two factions. After the death of the maternal ancestor, there was a family division of the property. The Taylor County land was conveyed to Frank Elliott and Vesta Elliott, husband and wife, who paid $11,000 for a warranty deed dated October 27, 1945. The grantors conveyed "all our undivided interest that we may have in and to" the lands. The recited consideration was $100. The Ward County land went to Mitt Elliott for a consideration. There was no reservation of mineral rights in either deed. Twenty-five of the Elliotts, twelve of whom were defendants in the trial court, signed the deed to Frank and Vesta Elliott. The grantors bound themselves, their heirs, executors and administrators to warrant and defend the premises to Frank and Vesta Elliott, their heirs and assigns, against every person claiming the same. Frank and Vesta Eliott conveyed an undivided one-third interest in the mineral rights in the Taylor County lands to their son, Thomas Frank.

Frank, Vesta and Thomas Frank Eliott instituted the action by bringing a suit for damages for the alleged wrongful attack on their title by a suit brought by appellants in Taylor County, Texas. The Frank Elliots based their claim upon allegations of breach of warranty, malicious prosecution and slander of title by appellants. They sought to recover their expenses in the successful defense of the Texas action and punitive damages. Appellants filed a demurrer and a general denial. A jury found for the plaintiffs (appellees) and assessed damages at $7,145.04. Judgment was entered against six of the twelve defendants, but a verdict was directed in favor of the other six.

Vesta Elliott, aged 77, who had been married to Frank

Elliott for 49 years, testified that she had taught school for 14 years, 10 of which followed her marriage to Frank. She identified Reb, Arma and Mitt as brothers of Frank. She recalled buying the Taylor County land from the Elliott family in 1945. She said that she and her husband paid the other Elliott heirs $11,500 in cash. Mrs. Elliott said that some of her money, along with her husband's, was used to make this purchase, and that some of the purchase price came from the sale of hogs, milk and wool to the production of which she had contributed. She stated that the purchase price was paid in portions to the grantors in the deed as they came by the Frank Elliott house to sign the deed. She claimed to have itemized statements showing the amount paid to each, which she thought were in the hands of her attorney. She testified that there was no agreement or conversation about an agreement to divide anything the land produced with any of the grantors in this deed, and that she and her husband were purchasing "clear title."

Mrs. Vesta Elliott said that the Texas suit was instituted in 1969 after Dale (son of Mitt) and Reb Elliott had made demands upon her husband for one-half of the mineral rights in the Taylor County land. She said that her husband and son employed lawyers in Texas to defend the suit there and that payments due from an oil company had been held up for about a year because of the litigation. According to her, $8,000 to $8,500 was spent defending this lawsuit. She said that she had checks to verify these expenditures.

Frank Elliott was 87 years old when he testified. It was his recollection that the purchase price was $11,000. He agreed that his wife had helped earn the money used by working on the farm and that she made it a rule to save $1,000 per year. He said that a Benton lawyer and a Texas law firm were employed to defend the Texas lawsuit, but that Thomas Frank had looked after the lawsuit for himself and his parents.

Frank Elliott recited this version of the family discussion about the property:

Frank looked after the Ward County land for his mother from 1923 until she decided to divide it among

her children. Oil was later discovered on the land she gave to her son Mitt, the father of Dale. The mother told Frank that she wanted him to divide some of the land that was left. They valued the Ward County land at $2,000 per acre and the remainder at $1,500 per acre. Nobody really wanted the Texas land. One of the children asked, "What if that land was to produce oil?" Mrs. Metta Elliott then said that whoever got that land could have it for $1,000 with the understanding that if it produced oil, a one-half interest was to be divided with the other children. But this wasn't done. Mitt took this land, it produced oil and he sold off one-half of it. The deed from Frank's and Mitt's mother contained no reservation of oil and minerals. Mrs. Metta Elliott was talking about her own estate, when she made the answer to the question about striking oil.

Gertrude Williams is a sister of Frank, Reb, Arma and Arch Elliott. She testified that she signed a "disclaimer" dated September 22, 1945, agreeing to take $11,000 within 80 days for 200 acres of land in Taylor County, Texas. The handwritten names of Frank, M. J., Arthur, Reb, Arma D., Arch, Arkie, Calvin, Odis, Harold, Luther and Leonard Elliott and of Idella Tarvin, on this document, all appeared to her to be their signatures. She said that neither Frank, Vesta nor Thomas Frank Elliott ever agreed to divide any interest in the oil rights in the Taylor County lands with her.

Reb Elliott also testified that Frank and Vesta and Thomas Frank Elliott never agreed, in his presence, to divide the oil royalties on the land.

Thomas Frank Elliott employed a Benton, Arkansas, law firm and an Abilene, Texas, firm to defend the action brought in Texas by appellants, or some of them. He itemized attorney's fees and expenses in the successful defense of that suit at a total of $6,794.07. He also detailed expenses of himself and his father in that defense totalling $510. He said that the royalty payments held up amounted to $350.97. He admitted that the Frank Elliott faction had not called upon either of the appellants or any other person who signed the deed to his parents to defend the breach of warranty action in Texas.

R. M. Rutledge, a Texas attorney, represented the appellants in a suit against Frank, Vesta and Thomas Frank Elliott in Taylor County, Texas, in December 1969, to establish an equitable ownership in an undivided interest in oil, gas and minerals of the Taylor County lands. He said he was first consulted by Dale and Howard Elliott, who informed him of family history, furnished him with documents relating to a family property division, depositions of some witnesses in earlier litigation in Ward County, along with other written material. This attorney said he advised the appellants that he thought it would be possible to establish their ownership of an undivided interest in oil, gas and mineral production of the Taylor County land, recommended filing the suit and accepted employment on a contingent fee basis, when appellants preferred this arrangement over an alternate cash fee suggested by Rutledge. The case was tried but appellees prevailed. Rutledge was of the opinion that the cause of action was just, even though he had recommended that no appeal be taken because he felt there would be great difficulty in overturning the trial court's decision. This lawyer stated that a lis pendens notice was filed, as normal Texas procedure, to prevent anyone from becoming a good faith purchaser of the lands for a valuable consideration without notice of the suit. He advised the Permian Corporation and Coastal States Gas Purchasing Company of the suit as a matter of routine. In prosecuting the case, Rutledge took the statements of the Dale Elliott faction made to him at face value.

Harold Elliott admitted signing the deed under which appellees claimed.

The circuit judge denied a directed verdict for appellants at the conclusion of the testimony on behalf of appellees insofar as appellees' cause of action for breach of warranty was concerned, but granted such a verdict insofar as malicious prosecution and punitive damages were concerned. At the conclusion of all the evidence, the court directed a verdict in favor of all of the defendants except appellants. The appellants were those who both signed the deed to the Frank Elliotts and joined in the Texas suit. Appellants' motion to dismiss and request for a directed verdict was denied.

Appellants argue that their filing of the Texas suit did not constitute a breach of their warranty under Texas law. We have concluded that they correctly contend that before there can be any recovery for breach of warranty under Texas law, there must have been an eviction, a surrender of possession to one asserting a paramount title or a purchase of the paramount title asserted, but that one who remains in possession and successfully defends his title is not evicted, actually or constructively. *Edward Schneider* v. *Lipscomb County National Farm Loan Assn.*, 146 Tex. 66, 202 S.W. 2d 832, 172 A.L.R. 1 (1947); *Veteran's Land Board* v. *J. R. Akers*, 408 S.W. 2d 795 (Tex. Civ. App. 1966). Even if Arkansas, rather than Texas, law were applied, the result would be the same. *Lammers* v. *American Southern Trust Company*, 172 Ark. 1013, 291 S.W. 437.

We find no support for appellees' argument that the filing of the lis pendens notice constituted an eviction. The Texas statutes merely make the filing of a notice of pendency of a suit notice to all the world of the content of the notice and that the suit is pending. Articles 6640—6643,[1] Vol. 19, Vernon's Texas Civil Statutes. Such a notice is constructive notice of the pending suit but not constructive eviction. Its purpose is to maintain the status quo so that property will be subject to the jurisdiction of the court in whosever hands it may come. It does not establish any lien, or have any application as between the parties, but gives effect to the rights ultimately established by a judgment in the case. *Black* v. *Burd*, 255 S.W. 2d 553 (Tex. Civ. App. 1953); *Dice* v. *Bender*, 383 Pa. 94, 117 A. 2d 725 (1955); *McVay* v. *Tousley*, 20 S.D. 258, 105 N.W. 932 (1905); *Troyer* v. *Bank of DeQueen*, 170 Ark. 703, 281 S.W. 14; *Mitchell* v. *Federal Land Bank of St. Louis*, 206 Ark. 253, 174 S.W. 2d 671; *Balckwood* v. *Daivdson*; 198 Ark. 1055, 132 S.W. 2d 799; *Health Betterment Foundation* v. *Thomas, Admr.*, 225 Ark. 529, 283 S. W. 2d 863.

We are unable to find any eviction, either actual or constructive. Appellees argue, however, that if third parties had attacked their title, appellants would have been required to defend under their warranty, so they should bear the cost of defending against their own attack and

---

[1]Section 6641 was repealed by Acts 1971, 62d Leg., P. 2722, Ch. 886, effective June 14, 1971, relating to the microfilming of records by counties.

that the recoverable costs include attorney's fees. They do not favor us with any authorities on this subject. Even so, an eviction or unsuccessful defense would have been essential to recovery if third parties had attacked appellees' title. See Annot., 105 A.L.R. 729, 731 (1936); 61 A.L.R. 10, 169 (1929). It appears that, under Texas law, attorney's fees expended in defending the suit of a third party would not be allowable as a part of the damages for breach of warranty of title in the absence of an agreement to pay them. *Turner* v. *Miller,* 42 Tex. 418 (1875); 19 Am. Rep. 47; *Adams* v. *Cox,* 150 S.W. 1195 (Tex. Civ. App. 1912); *Cates* v *Field,* 85 S.W. 52 (Tex. Civ. App. 1905); *Shook* v. *Laufer,* 100 S.W. 1042 (Tex. Civ. App. 1907); *Clark* v. *Mumford,* 62 Tex. 531 (1884). We know of no authority for the recovery of such fees just because the covenantor asserted an adverse title in the absence of fraud or malice. Appellees argue that there was a malicious prosecution of the Texas action by appellants. We do not find substantial evidence to support this argument when the apparent good faith belief of the Dale Elliott faction that there was a reciprocal agreement among the parties as to sharing the mineral rights in all the Elliott lands in Texas is viewed in the light of the testimony of Texas attorney Rutherford, and the fact that Mitt Elliott had conveyed an interest in the oil royalties in the Ward County lands to Frank and other Elliott heirs after Frank had demanded that he do so and filed suit to enforce the demand.

Appellees also argue that they should be entitled to recover these expenses because some of those who joined in the Texas suit were not grantors in the deed, so it was appellants' duty to defend against their suit.[2] What we have just said with reference to the recovery of these attorney's fees applies with equal force to this argument. We also note that attorney's fees are not a recoverable element of damages in Texas in a suit for damages for the bringing of a groundless suit, even though it was brought with intent to harass. *Salado College* v. *Davis,* 47 Tex. 131 (1877).

---

[2] It may well be that the appellants were really in no different position than those defendants who were not signers of the deed. These persons all seem to have been heirs of the warrantors who would be liable on their respective ancestors' warranty to the extent of the assets which descended to the respective heirs. *Young* v. *Moore,* 110 S.W. 548 (Tex. Civ. App. 1908); *Jones* v. *Franklin,* 30 Ark. 631. See also, *McClure* v. *Dee,* 115 Iowa 546, 88 N. W. 1093 (1902).

Appellees' argument that Vesta, Thomas and Frank Elliott should recover their attorney's fees because they were not parties to the alleged agreement also fails for the reasons just stated.

On cross-appeal, appellees contend that the trial court erroneously directed a verdict upon their causes of action for slander of title, wrongful interference with the contractual rights of appellees and punitive damages. They argue that these matters are governed by the law of Arkansas, not Texas. Even if they were, appellees could not prevail because there is no substantial evidence of malice on the part of appellants. Although malice may be inferred in an action for slander of title from the falsity of assertions made when they are known by the one making them to be false, one who has reasonable grounds to suppose himself possessed of a legal title to, or equity in, the lands involved which would enable him to maintain an action for a conveyance is not liable in damages for slander of title. *Sinclair Refining Co.* v. *Jones,* 188 Ark. 1075, 70 S.W. 2d 562. The action cannot be maintained if the claim was asserted by the defendant in the action in good faith, and if the act complained of was founded on probable cause or prompted by a reasonable belief, malice may not be inferred from a mistake of law honestly made. Lack of probable cause alone will not establish malice. The evidence must support the reasonable inference that the representation made was not only without legal justification or excuse, but that it was not innocently made. *Hicks* v. *Early,* 235 Ark. 251, 357 S.W. 2d 647. Malice is also a necessary element of a cause of action for wrongful interference with the contractual rights and relationships of another. *Mason* v. *Funderburk,* 247 Ark. 521, 446 S.W. 2d 543. Of course, if there is no cause of action for want of evidence of malice, punitive damages cannot be recovered. We agree with the trial court that there was no evidence of malice for the reasons earlier stated.

The judgment is reversed and the cause dismissed.